IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CODY BROWN**, *individually and behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>**KADENCE INTERNATIONAL, INC.,**<br><br>Defendant. | CIVIL ACTION<br><br>NO. 22-1097-KSM |

**MEMORANDUM**

**MARSTON, J.**                                                                                                     **September 15, 2023**

      Lead Plaintiff Cody Brown was employed as a Marketing Helper and Support Assistant by Defendant Kadence International, Inc. ("Kadence"). (Doc. No. 1.) Lead Plaintiff brought this lawsuit, individually and on behalf of others similarly situated ("Plaintiffs"), alleging that Defendant misclassified him as an independent contractor and failed to pay him appropriate overtime compensation, violating the Fair Labor Standards Act ("FLSA") and Pennsylvania's Minimum Wage Act ("PMWA"). (*Id.*) On March 23, 2023, the Court granted in part Plaintiffs' "Unopposed Motion for an Order Certifying the Case as a Collective Action for Settlement Purposes Only, Approving the Settlement Agreement, Granting a Service Award, and Awarding Attorneys' Fees and Reimbursement of Expenses." (Doc. Nos. 27, 28.) At that time, the Court took under advisement Mr. Michael Murphy and Mr. Michael Groh's ("Plaintiffs' counsel") request for attorneys' fees and costs. (*Id.*) Presently before the Court is Plaintiffs' counsel's renewed request for attorneys' fees and costs, which provides supplemental argument in support of their original request. (Doc. Nos. 23, 29.) For the following reasons, the request is granted.

I.  **BACKGROUND**

The Court previously recounted the factual and procedural history of this case at length in a Memorandum Opinion published on March 23, 2023. (*See* Doc. No. 27 at 2–7.) Because the Court writes for the benefit of Plaintiffs' counsel, who are familiar with the issues before the Court, it reviews only the facts relevant to the pending request for attorneys' fees and costs.

After "extensive arms' length negotiations," Plaintiffs and Defendant agreed upon a "fair, adequate, and reasonable" settlement to resolve Plaintiffs' claims. (Doc. No. 23-1 at 6.) Subject to the Court's approval, Defendant agreed to pay a sum of $220,000, allocated accordingly:

- $122,468 to the collective, to be distributed to up to 93 putative members on a *pro rata* basis, based on the degree of economic harm they experienced, as estimated by counsel;
- $2,500 to Mr. Brown as an award for his service as class representative;
- $77,000[1] to Plaintiffs' counsel in attorneys' fees and $532 in costs; and
- $17,500 to the Claims Administrator's fees and costs.

(*Id.*)

The parties' settlement plan was to mail all putative members of the collective an "Initial Settlement Payment Check" in the amount of the collective members' *pro rata* contribution to the total estimated collective-wide damages in unpaid overtime compensation. (*Id.* at 7.) By redeeming the check, the member would elect to join the collective action as an "Opt-in Plaintiff" and waive their individual claims against Defendant. (*Id.*) Each member had 75 days to sign and redeem the check, enclosed with a "Notice of Collective Action Settlement." (*Id.*) After 75 days, any checks that remained unnegotiated would be voided. (*Id.* at 8.) And within 14 days after the

---

[1] The total amount of $77,532 does not include $4,300 that Defendant already agreed to pay Plaintiffs' counsel as reimbursement for costs related to the October 14, 2022 mediation. (Doc. No. 23-1 at 4 n.1); (Doc. No. 23-1, Ex. B at 2, 14.)

expiration of the 75-day deadline, the funds associated with any unclaimed check would be redistributed, on a *pro rata* basis, to all Opt-In Plaintiffs via "Residual Settlement Payment Checks." (*Id.*) The Opt-In Plaintiffs would have another 75 days to redeem the check, and any remaining funds would be distributed, *cy pres*, to the Pennsylvania IOLTA Board. (*Id.*)

In reviewing Plaintiffs' proposed plan, the Court acknowledged that courts traditionally approve FLSA collectives in a "two-step" process: "At the first stage, the court considers whether the collective should be conditionally certified for the purposes of providing notice to collective members. The second stage is known as 'final certification,' where the plaintiff bears the burden of establishing that the members of the proposed collective are 'similarly situated' within the meaning of § 216(b)." (Doc. No. 27 at 7 (cleaned up).) But here, Plaintiffs sought certification via a "one-step" process, "by which the Court, after determining that members of the proposed settlement collective are in fact similarly situated, will review the settlement for fairness." (*Id.*) In short, Plaintiffs requested conditional certification of the collective and approval of the settlement at the same time. The Court cited several concerns with this approach, chief among them was whether a "one-step" certification process could provide adequate notice to putative members of the collective; nonetheless, upon a comprehensive review of relevant precedent,[2] the

---

[2] The Court noted that, "although the Third Circuit has historically promoted a two-step certification process for FLSA collectives, it has also explained that the first step, conditional certification, 'is not really a certification' [but] "the district court's exercise of its discretionary power to facilitate the sending of notice to potential class members[.]" (Doc. No. 27 at 9 (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).) The Court also noted that the due process concerns in FLSA collective actions stand in significant contrast to those in Rule 23 class actions, because Rule 23 class actions bar class members from litigating class claims if they fail to opt *out*, whereas FLSA collective actions only bar those members who opt *in*. (*Id.* at 9–10.) Thus, "in the absence of heightened due process concerns, and because the Third Circuit has noted that the first step of the certification test is 'fairly lenient,'" the Court found that Plaintiffs could satisfy their notice obligation by enclosing the Notice with each collective member's Initial Settlement Payment Check. (*See* Doc. No. 27 at 10.) In doing so, the Court emphasized that districts in other circuits have adopted a one-step approach in these circumstances. (*See* Doc. No. 27 at 8 n.8 (citing *Mollett v. Kohl's Corp.*, No. 21-CV-707-PP, 2022 WL 4641082, at *2 (E.D. Wis. Sept. 30, 2022) ("A one-step settlement approval process is appropriate for FLSA collectives.").)

Court approved the parties' proposed "one-step" settlement process "in the interest of judicial economy and administrative efficiency." (Doc. No. 27 at 8.)

Because the Court allowed the parties to proceed with a novel 'one-step' settlement approach, it decided to "postpone consideration of the attorneys' fees until the Court can assess the degree of opt-in participation in the settlement and the effectiveness of the Notice." (*Id*. at 23.) The Court instructed Plaintiffs' counsel to "file redacted facsimiles of the negotiated checks with the Court after the initial 75-day redemption period, at which point Plaintiffs' counsel may then supplement any arguments in support of the requested fee amount." (*Id.*)

On August 9, 2023, Plaintiffs' counsel complied with that instruction. (Doc. No. 29.) Plaintiffs' counsel reported that, out of a settlement collective of 91[3] members, 67 individuals redeemed their Initial Settlement Payment Checks, thereby joining this matter as Opt-In Plaintiffs. (*Id.* at 1.) Plaintiffs' counsel also attached a list of the Opt-In Plaintiffs and redacted copies of the Opt-In Plaintiffs' negotiated Initial Payment Settlement Checks. (Doc. No. 29, Ex. A.) In light of this "excellent participation rate of 74%" Plaintiffs' counsel renew their request for $77,000 in attorneys' fees and $532 in costs. (*See* Doc. No. 29 at 1); (*see also* Doc. No. 23-1 at 6, 27.)

## II.   LEGAL STANDARD

In the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in cases brought under the FLSA or state wage and hour laws as a collective action. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016). This

---

[3] The collective certified by the Court contained 93 putative members, including Lead Plaintiff. Plaintiffs report that, [w]hen finalizing calculations for purposes of settlement administration, the parties discovered that one individual (identified as Contractor 27), who worked exclusively abroad during the entire Claims Period, had been inadvertently included in the IC Shift Data Spreadsheet produced by Defendant." And "because the FLSA does not apply to workers outside of the United States, the parties agree that this individual did not meet the definition of the settlement class approved by the Court, which anticipates a nationwide FLSA collective action." (Doc. No. 29 at 1 n.1.)  Therefore, excluding this ineligible individual and Lead Plaintiff, the collective consists of 91 members.

is because the percentage-of-recovery method encourages efficiency and "rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re Gen. Motors Corp.*, 55 F.3d 768, 821 (3d Cir. 1995)). In determining whether the requested fees are reasonable under the percentage-of-recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections ... to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Third Circuit has also recommended that courts cross-check an award of attorneys' fees with the lodestar method, which requires the court to compare the attorneys' recovery under the percentage-of-recovery method with the "lodestar." *Id.* The lodestar is calculated by "multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.* "The [lodestar] crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). "[W]hen the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *Id.* (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)).

### III. DISCUSSION

Plaintiffs' counsel seeks $77,000, which amounts to 35% of the total settlement, in attorneys' fees and $532 in costs. (Doc. No. 23-1 at 6, 27.) The Court finds that all seven *Gunter*

5

factors, as well as the lodestar analysis, weigh in favor of awarding the requested fees.

First, Plaintiffs' counsel's efforts allowed the collective to recover a non-reversionary cash settlement of $220,000 in this matter. (*Id.* at 30.) To avoid a windfall to counsel, as the size of a common fund increases, counsel's percentage of recovery should generally decrease. *See Fein v. Ditech Fin., LLC*, No. 5:16-CV-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017). Even after accounting for attorneys' fees, costs, and Lead Plaintiff's service award, the remaining Settlement Fund of $122,468 allows for a minimum 55% recovery of the expected overtime damages for each member of the collective. (Doc No. 23-1 at 30–31.) Courts have awarded attorneys' fees of 35% of the total where the settlement fund was much larger—and even much smaller—than the common fund here. *Compare Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *9 (E.D. Pa. Sept. 27, 2017) (approving a 35% recovery of attorneys' fees from a settlement fund of $775,000), *with Kyem v. Merakey USA*, No. 2:19-CV-05577-KSM, 2022 WL 425584, at *6 (E.D. Pa. Feb. 11, 2022) (approving a 35% recovery of attorneys' fees from a settlement fund of $70,000).

In fact, following the negotiation of the Initial Settlement Payment Checks, approximately $16,000 of the $122,468 Settlement Fund remains unclaimed and will be distributed to the Opt-In Plaintiffs via Residual Settlement Payment Checks. (Doc. No. 29 at 4.) Accordingly, just as Plaintiffs' counsel predicted, Opt-In Plaintiffs will receive up to 15% *more* than what they received in their Initial Settlement Payment Checks, which represented 55% of their expected overtime damages.[4] (*Id.*; *see also* Doc. No. 27 at 19 n.15 ("During the hearing, Plaintiffs' counsel indicated

---

[4] On average, Plaintiffs' counsel estimate that the Opt-In Plaintiffs stand to receive 63% of their maximum potential overtime damages. (*See* Doc. No. 29 at 5.) Plaintiffs' counsel reiterate that this amount is fair and reasonable in light of "the highly contingent and unpredictable nature of FLSA collective action litigation." (*Id.*) The Court previously accepted this argument at the conditional certification and settlement approval stage, and accepts this argument again here. (*See* Doc. No. 27 at 15, 18.)

that, in his experience, the usual rate of opt-in participation in FLSA collective actions is about 15–30%, and that even if this settlement receives double that participation, the Participating Settlement Class Members will still receive almost full recovery.").)

Second, "of the 67 individuals who have joined this lawsuit and settlement as Opt-In Plaintiffs, **not one of them** has contacted Plaintiff's Counsel to express any objections to the overall settlement amount, their individual payment, or Plaintiff's Counsel's requested attorneys' fees and costs."  (Doc. No. 29 at 3 (emphasis in original); *see also id.* ("To the contrary, multiple Participating Settlement Class Members have expressed positive opinions of the settlement and the efforts of the Named Plaintiff and Plaintiffs' Counsel in securing it.").)  *See Baez-Medina v. Judge Grp., Inc.*, No. CV 21-3534, 2023 WL 4633503, at *5 (E.D. Pa. July 20, 2023) ("There have been no objections to either the settlement terms or the attorneys' fee request."). Moreover, the 74% participation rate, "representing nearly three quarters of the putative collective," is "exceptionally high for opt-in settlements under the FLSA" and constitutes strong evidence of the fundamental fairness of the parties' settlement. *See Wood v. Saroj & Manju Invs. Phila. LLC*, No. CV 19-2820-KSM, 2021 WL 1945809, at *7 (E.D. Pa. May 14, 2021) (holding 20% participation rate in FLSA settlement was "very high" and demonstrated collective's support for the settlement).

Third, Plaintiffs' counsel has litigated this matter skillfully, efficiently, and effectively. (*See* Doc. No. 23-1 at 32.)  Plaintiffs were represented by attorneys Michael Murphy and Michael Groh of the Murphy Law Group. (Doc. No. 23-2, Ex. D.)  The Court agrees that Plaintiffs' counsel "have significant employment law experience," including experience with wage and hour class and collective actions litigated in this judicial district.[5]  (Doc. No. 23-1 at 32.)

---

[5] Mr. Groh, specifically, reports that in the last ten years, he has litigated and resolved "over one hundred individual and/or collective/class action lawsuits arising under federal and state wage laws." (Doc. No. 23-2, Ex. D at ¶ 6.)

Fourth, the Court must consider the complexity and duration of the litigation. Although the parties reached an early settlement in this case, Plaintiffs' counsel indicate they have "nevertheless developed this case for a considerable amount of time." (Doc. No. 23-1 at 33.) Plaintiffs' counsel engaged in "extended discussions regarding the nature and constitution of the proposed collective, the exchange of voluminous payroll records and other documents and information relevant to the claims and defenses in this case, and prolonged, arms-length settlement negotiations, including participating in the full day's mediation with Judge Reuter." (*Id.*) The parties only reached a settlement after Plaintiffs' counsel conducted a thorough investigation of the claims against Defendant, which required a detailed review of Defendant's payroll records and extensive consultation with Lead Plaintiff and the Opt-In Plaintiffs. (*Id.*) Once that investigation concluded, Plaintiffs' counsel was tasked with calculating the estimated damages to each of the putative collective members, performing relevant legal research under the FLSA, and preparing legal briefing to support judicial approval of the settlement. (*Id.*) To that end, this case involved complex factual and legal issues that necessitated counsel's expertise, such as the misclassification of employees as independent contractors, the calculation of overtime hours worked in the absence of certain recordkeeping, the applicability of the appropriate statute of limitations, and Plaintiffs' entitlement to liquidated damages. (*Id.* at 34.)

Moreover, upon submitting the motion for conditional certification and settlement approval, Plaintiff's counsel undertook further preparation of arguments in support of the motion at the March 6 fairness hearing. (Doc. No. 29 at 3.) And since the Court's approval of the settlement agreement on March 28, Plaintiffs' counsel has coordinated with Lead Plaintiff, Defendant, Opt-In Plaintiffs, and the Claims Administrator "to administer the settlement, hand[e] check reissuing requests and answering inquiries, and prepar[e] the instant filing [supplemental

request for attorneys' fees and costs]." (*Id.*) Accordingly, although the duration of this matter spanned only one year, (*see* Doc. No. 1 (complaint filed in March 2022); Doc. No. 28 (settlement approved in March 2023), Plaintiffs' counsel have invested significant additional time in this case, even after their clients' claims were formally resolved.

Fifth, Plaintiffs' counsel accepted this case under a wholly contingent basis. (Doc. No. 23-1 at 35.) Although Plaintiffs' counsel believe that the claims in this action were meritorious, they concede that Defendant's defense admittedly "posed a real risk to both a finding of liability and damages."[6] (*Id.*) Thus, the Court acknowledges that Plaintiffs' counsel undertook a high risk of non-payment and non-reimbursement for advanced costs and expenses. (*Id.*)

Sixth, Plaintiffs' counsel dedicated a significant amount of time to litigating this matter, investigating Plaintiffs' claims, conducting legal research, preparing for settlement, engaging in a mediation, and drafting this motion. (*See generally* Doc. No. 23-2, Ex. D-1.) As of the filing of their motion for conditional certification and settlement approval, Plaintiffs' counsel reported that they spent slightly over 100 hours working on this matter. (Doc. No. 23-2, Ex. D at ¶ 13.) Since the Court's approval of the settlement on March 28, Plaintiffs' counsel has expended an additional almost-17 hours of work in their efforts overseeing the administration of the settlement. (Doc. No. 29 at 3.)

Finally, the requested 35% award is similar to what our sister courts have awarded in like cases. In the Third Circuit, courts using the percentage-of-recovery method to calculate attorneys' fees generally approve of fees ranging "from roughly 20–45%." *Marby v. Hildebrandt*, Civil

---

[6] Specifically, a significant litigation risk favoring settlement was the Third Circuit's decision in *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022), which raised the prospect of certain jurisdictional challenges by Defendant, a foreign corporation with a principal place of business outside of Pennsylvania, to the continued participation of any out-of-state opt-in plaintiffs. As Plaintiff notes, these concerns were abated by the United States Supreme Court's recent decision in *Mallory v. Norfolk S. Ry.*, 143 S. Ct. 2028 (2023). But this case was filed, settled, and approved by the Court before the *Mallory* decision issued.

9

Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases). Other courts have awarded attorneys' fees totaling 35% of the total settlement amount in similar wage and hour cases. *See, e.g., Tompkins*, 2017 WL 4284114, at *9 (awarding attorneys' fees in the amount of 35% of total settlement award); *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, CIVIL ACTION NO. 16-2663, 2017 WL 2215264, at *3 (E.D. Pa. May 18, 2017) (same).

In addition to the *Gunter* factors weighing in favor of awarding the request attorneys' fees, a lodestar cross-check also confirms the reasonableness of their request.[7] Prior to Plaintiffs' counsel's submission of their motion on February 3, 2023, Mr. Murphy expended 1.5 hours on this litigation at an hourly rate of $625 for a total of $937.50 in fees. (Doc. No. 29 at 2.) In that same time period, Mr. Groh expended 98.83 hours on this litigation at an hourly rate of $400 for $39,532 in total fees. (*Id.*) Together, Plaintiffs' counsel accrued $40,469.50 in fees based on the lodestar method. (*Id.*) They are requesting $77,000 in fees based on the percentage-of-recovery method, which is approximately **1.92** times more than what they would receive under the lodestar method. This lodestar is in the higher range of acceptable lodestars used in class and collective cases in this Circuit, which typically range from "1.35 to 2.99." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d

---

[7] In Plaintiffs' counsel's original filing, they calculated their lodestar as $32,832.25 "by multiplying their attorney time by the reasonable rates of $324 and $475 for Michael Groh, Esq. and Michael Murphy, Esq., respectively." (Doc. No. 29 at 2.) But as Plaintiffs' counsel point out, these hourly rates were based on an "outdated" fee schedule. (*Id.*) Typically, when performing a lodestar cross check, district courts turn to the hourly rates published by Philadelphia Community Legal Services ("CLS"), which are a "fair reflection of the prevailing market rates in Philadelphia." (*Id.* (quoting *Maldonado v. Houston*, 256 F.3d 181, 187–88 (3d Cir. 2001).) Plaintiff was unaware that at the time they filed their original motion on January 19, 2023, that CLS had just updated its fee schedule. (*Id.*) Based on these new standards, Mr. Groh's current recommended fee range is $475–$530 and Mr. Murphy's current recommended fee range is $535–$625. (*Id.*) Plaintiffs' counsel requests that the Court utilize the updated rates of $400 and $625 for Mr. Groh and Mr. Murphy, respectively. The Court agrees that these standards are proper in assessing the lodestar in this case, and in fact provides greater support for granting the requested fee amount than the previous lodestar, which was calculated at 2.4. (Doc. No. 23-1 at 39; Doc. No. 23-2, Ex. D-1.)

722, 742 (3d Cir. 2001) (collecting cases).

But since Plaintiffs' counsel filed their motion on February 3, 2023, Mr. Groh has performed an "additional 16.92 hours of work" monitoring the implementation of the settlement and addressing any issues arose in the distribution of the settlement awards. (*Id.* at 3.) This time, when multiplied by Mr. Groh's $400 hourly rate, adds $6,768 to the lodestar, and brings the total fees in this case to: $47,237.50.  Thus, considering the more recent work performed on this matter, the lodestar cross-check multiplier is reduced to **1.64**, which falls into the lower range of acceptability. (*Id.*)  *See also Anderson v. Liberty Healthcare Corp.*, No. 2:20-cv-03014-RAL, 2021 WL 6752257, at *2 (E.D. Pa. Nov. 22, 2021) ("Moreover, the fee's reasonableness is further confirmed by submissions indicating that it results in an acceptable 'lodestar multiplier' of 1.82 when compared to Plaintiffs' counsel's reported lodestar using hourly rates described in the Philadelphia Community Legal Services fee schedule.").

Accordingly, the Court finds that Plaintiffs' counsel's requested fee award is reasonable. The Court also finds that Plaintiffs' counsel's request for $532.00 in costs is reasonable. *See Kyem*, 2022 WL 425584, at *8 (granting $746.63 in "reasonable costs" in FLSA action).

## IV.   CONCLUSION

For the reasons above, Plaintiffs' counsel's request for $77,000 in attorneys' fees and $532 in costs is granted.  An appropriate Order follows.